## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOSEPH O. TRUJILLO,

      Plaintiff,

v.                                                                      No. CIV 03-656 JP/LFG

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MAGISTRATE JUDGE'S ANALYSIS
## AND RECOMMENDED DISPOSITION[1]

      Plaintiff Joseph O. Trujillo ("Trujillo") invokes this Court's jurisdiction under 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner determined that Trujillo was not eligible for disability insurance benefits ("DIB"). Trujillo moves this Court for an order remanding this matter for consideration of new evidence.[2]  [Doc. 7.]

---

[1]Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

[2]Although Plaintiff characterized his opening motion as a Preliminary Motion to Remand, in his reply, he agrees that this matter is fully briefed and that no further briefing is necessary. [Doc. No. 10, n. 1.]

**Background**

Trujillo was born on March 27, 1956 and was 46 years old at the time of the administrative law hearing.  He is divorced and has five children, ages 8 to 16.  [Tr. at 62.]  He currently is single, and living out of his vehicle or at his mother's house.  He completed the tenth grade in high school and earned his G.E.D. in 1993.  [Tr. at 37.]  Trujillo was employed by Johnson Controls at Los Alamos National Laboratories ("LANL") for about 10½ years as a maintenance carpenter.  [Tr. at 38, 116.]

On April 23, 2001, Trujillo submitted an application for DIB, claiming an onset date of January 16, 2001, based on back pain and problems.  [Tr. 95, 116.]  He claims that he was laid off from his position at LANL as of January 16, 2001.  [Tr. at 38-39.]

Administrative Law Judge Kathleen H. Switzer ("ALJ" or "Judge Switzer") held a hearing on September 12, 2002 in Santa Fe, at which Trujillo was represented by a non-attorney.  [Tr. at 35.]  In a decision, dated December 14, 2002, Judge Switzer found that Trujillo was not eligible for benefits.  Judge Switzer specifically determined that Trujillo had the residual functional capacity ("RFC") to perform a significant range of light work and that there were a significant number of jobs in the national economy that he could perform. [Tr. at 24.]  On May 20, 2003, the Appeals Council denied Trujillo's request for review.  [Tr. at 7.]  This appeal followed.

**Standards for Determining Disability**

In determining disability, the Commissioner applies a five-step sequential evaluation process.[3]  The burden rests upon the claimant to prove disability throughout the first four steps of this process, and if the claimant is successful in sustaining his burden at each step, the burden then shifts to the

---

[3]20 C.F.R. § 404.1520(a)-(f) (1999); Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

Commissioner at step five.  If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends.[4]

Briefly, the steps are: at step one, claimant must prove he is not currently engaged in substantial gainful activity;[5] at step two, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . .,"[6] at step three, the Commissioner must conclude the claimant is disabled if he proves that these impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1 (1999);[7] and, at step four, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[8]  If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, at step five, that considering claimant's RFC,[9] age, education and past work experience, he is capable of performing other work.[10] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove he cannot, in fact, perform that work.[11]

---

[4]20 C.F.R. § 404.1520(a)-(f) (1999); Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir. 1989).

[5]20 C.F.R. § 404.1520(b) (1999).

[6]20 C.F.R. § 404.1520(c) (1999).

[7]20 C.F.R. § 404.1520(d) (1999).  If a claimant's impairment meets certain criteria, that means his impairment is "severe enough to prevent him from doing any gainful activity."  20 C.F.R. § 416.925 (1999).

[8]20 C.F.R. § 404.1520(e) (1999).

[9]One's RFC is "what you can still do despite your limitations."  20 C.F.R. § 404.1545(a).  The Commissioner has established RFC categories based on the physical demands of various types of jobs in the national economy.  Those categories are: sedentary, light, medium, heavy and very heavy.  20 C.F.R. § 405.1567 (1999).

[10]20 C.F.R. § 404.1520(f) (1999).

[11]Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).

The ALJ can meet her burden of proof at step five in two ways: (1) by relying on a vocational expert's testimony; and/or (2) by relying on the "appendix two grids." Taylor v. Callahan, 969 F. Supp. 664, 669 (D. Kan. 1997).  For example, expert vocational testimony might be used to demonstrate that the plaintiff can perform other jobs in the economy.  Id. at 669-670.  Before applying the grids, the ALJ must first find the following:  "(1) that the claimant has no significant nonexertional impairment; (2) that the claimant can do the full range of work at a particular residual functional capacity on a daily basis; and (3) that the claimant can perform most of the jobs in that residual functional capacity category."  Id. at 669 (*relying on* Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993)).  Nonexertional limitations can include mental impairments.  The grids do not consider nonexertional limitations; therefore, if significant nonexertional limitations are present, the grids may not be applicable.  Id.  However, the "mere presence of a nonexertional impairment does not preclude reliance on the grids, but the nonexertional impairment must interfere with the ability to work."  Id. (internal citations omitted.)  In this case, Judge Switzer used the grids as a framework for considering Trujillo's limitations, along with testimony by a VE, in reaching her decision at step five of the analysis that Trujillo was not entitled to benefits.  [Tr. at 23-24.]

## Standard of Review and Allegations of Error

On appeal, the Court considers whether the Commissioner's final decision is supported by substantial evidence, and whether the Commissioner used the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a mere scintilla, but it need not be a preponderance.  Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992); Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).  The Court's review of the

Commissioner's determination is limited.  Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1497 (10th Cir. 1992).  The Court's function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision and whether the correct legal standards were applied.  Id. at 1497-98.  In Clifton v. Chater, the Tenth Circuit described, for purposes of judicial review, what the record should show:

> The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.  Rather, in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence he rejects.

Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (internal citations omitted).  If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed.  The Court cannot re-weigh the evidence or substitute its judgment for that of the Commissioner.  Hargis v. Sullivan, 945 F.2d 1482, 1486 (10th Cir. 1991).

After thoroughly and carefully reviewing the medical records, the ALJ concluded that Trujillo was not disabled under the standards of the Social Security Act.  [Tr. at 25.]  In reaching this decision, Judge Switzer made the following findings: (1) Trujillo did not engage in substantial gainful activity after the onset date of January 16, 2001; (2) Trujillo has a degenerative disc disease that affects his spine and causes back pain and sciatic pain in his left leg that is considered "severe" for purposes of the ALJ's evaluation; (3) this impairment was not severe enough to meet or equal a Listing; (4) Trujillo's allegations regarding his subjective symptoms and limitations were not totally credible; (5) Trujillo retained a RFC to perform light work, except he cannot stand for a total of six hours during an eight hour work day and cannot perform tasks that require climbing, balancing, stooping, kneeling, crouching, or crawling more than occasionally; (6) Trujillo is able to perform the

work he was doing at the time of his alleged onset, but may not be able to perform that work as it is generally performed in the national economy; (7) Trujillo has the RFC to perform a significant range of light work; (8) although his exertional limitations do not permit him to perform the full range of light work, use of the grids as a framework indicate the existence of a significant number of jobs in the economy that Trujillo can perform; and (9) Trujillo was not under a disability, as defined by the Social Security Act from the date of onset to the date of the ALJ's decision.  (Tr. at 25.)

In this appeal, Trujillo argues primarily that this matter should be remanded for consideration of new evidence related to an alleged mental impairment.  He specifically contends that there is not substantial evidence to support the finding of no psychological impairment, that good cause exists to remand for consideration of additional evidence related to an alleged mental impairment and that the Commissioner failed to develop the record and to include all limitations to the VE with respect to Trujillo's alleged mental impairment.  Trujillo does not contend, however, that the Commissioner's decision was erroneous or lacking in substantial evidence as to findings made regarding Trujillo's back condition. The Commissioner argues that the ALJ's decision should be affirmed because substantial evidence supports the ALJ's decision and because the decision is a correct application of the regulations.  [Doc. 8.]

After a review of the entire record, this Court finds that the ALJ's careful and thorough decision was supported by substantial evidence, that there is no error in that decision, and that there is no basis for remand.  Therefore, the Court recommends that the motion for remand be denied.

### Summary of Trujillo's Work History, Medical Conditions and Treatment

The Court has reviewed Trujillo's entire administrative record and the additional records supplied by Trujillo's counsel as part of this briefing.  However, because Trujillo narrows his

challenge to issues regarding an alleged mental impairment, the Court omits lengthy discussion or summary of Trujillo's back condition and/or impairment, and related limitations.

From about 1989 until January 16, 2001, the date of onset, Trujillo worked for Johnson Controls at LANL as a maintenance carpenter, which included making repairs to hardware and furniture. [Tr. at 38-39, 117.]  Trujillo suffered an injury to his back in 1989 while carrying heavy materials at work, and re-injured his back in 1991, also while working.  [Tr. at 43, 45.]  Trujillo was off work for about three months in 1991 related to his back injury and then returned to light duty work at LANL.[12]  He claims that he was accommodated at work due to his back injury and continued to work light duty throughout his employment at LANL.  Trujillo contends that in January 2001, his employer no longer wished to accommodate him and that he was sent for a foreman job which was refused to him because of his light duty background and needs.  [Tr. at 39.]  Thus, he claims, although it is not entirely clear from the records, that he was laid off from his position at LANL.  [Tr. at 18.]

There are a few medical records for Trujillo from 1993-1995.  One of those records notes that Trujillo suffered from some emotional distress that was indicated by sleep problems but that these problems were relatively minor.  [Tr. at 203.]  Trujillo was able to work even after his back injuries, although he was limited to light duty work.  [Tr. at 199.]  There are no medical records for the years 1996 to 2000.

In 2000, Trujillo was seen by the LANL Occupational Medical Group regarding his long history of lower back pain with intermittent flare-ups.  A permanent lifting restriction of 25 pounds

---

[12]It appears that Trujillo was released by medical providers to heavy physical work in 1993, but that he actually returned to light duty work because of his continuing lower back pain.  [Tr. at 152-160.]

was noted.  [Tr. at 183.]  Although he had been taking non-prescription Ibuprofen for his pain, he began taking Celebrex and Ultram in 2000, which gave him some improvement with his sleeping problems and pain.  [Tr. at 180, 181.]  He was given a workers' compensation rating of 10% impairment related to L5 SI disc problem, but he never was considered to be a good candidate for surgery.  [Tr. at 152-60, 188, 189.]

In 2000, Trujillo reported that he had handled his ongoing back pain through the use of alcohol, although he stated he had stopped drinking in December 1999.  [Tr. at 152-60.] Subsequent records indicate he was still drinking, as late as 2003.  [Doc. No. 7, Ex. 1.]  Although there are a number of medical records from 2000, all of them relate to his complaints of back pain.  There is no indication of alleged mental impairments in these 2000 medical records.

In 2001, Trujillo again was seen a number of times regarding his lower back pain complaints. On January 9, 2001, the medical record indicates that Trujillo was separated from his wife due to domestic abuse.  He had decreased energy, was sleeping poorly and was losing weight.  Dr. David Caldwell, an orthopedic physician, recommended that Trujillo be treated for depression and that he have physical therapy.  [Tr. at 191.]  A week later Trujillo contends he was laid off from work.  [Tr. at 36.]  On January 22, 2001, Dr. Caldwell observed that a recent MRI of his back had not shown any nerve impingement or arthritis.  A recent bone scan was also entirely normal.  Dr. Caldwell suspected a muscle tension disorder and recommended Zoloft to help Trujillo with his underlying depression and sleep disturbance.  [Tr. at 189.]

None of the medical records from January 22-April 2001 indicate that Trujillo was no longer working or that he was incapable of working, although apparently his last day of work was January

16, 2001.  [Tr. at 189, 163-166.]  The records instead indicate that he could return to work with some restrictions.  [Tr. at 163,  165.]

On April 23, 2001, Trujillo applied for DIB.  [Tr. at 95.]  In his disability report, he indicated that his back problems were the reason for his disability.  He could not lift things, had difficulties walking, standing and sitting and his left leg went numb.  [Tr. at 116.]   In the Daily Activities Questionnaire he filled out on July 30, 2001, Trujillo does not state that he was depressed.  He claimed to be irritable with people at times and that he had problems fighting with his spouse.  [Tr. at 136]

On September 19, 2001, Trujillo filled out a reconsideration disability report in which he stated that his symptoms were getting worse and that he also was being treated for anger management.  [Tr. at 140.]  On October 16, 2001, in his underlying request for reconsideration of the denial of social security benefits, Trujillo indicated that his physical and emotional condition prevented him for working.  [Tr. at 79.]  However, up until this point, there is no indication in the many 2000 and 2001 medical records that Trujillo suffered from any significant mental condition.

On October 30, 2001, Dr. Karen Evans at La Familia Medical Center saw Trujillo for the first time.  [Tr. at 216.]  Trujillo  discussed his back pain and was taking Vioxx along with a muscle relaxant for muscle spasms in his back.  [Tr. at 216.]  He was smoking about 10 cigarettes a day and drinking 3-4 beers per week.  Dr. Evans observed Trujillo to be somewhat depressed appearing. Trujillo stated that he had felt depressed in the past and had taken the anti-depressant Zoloft approximately one year ago for a period of one month.  He reported that Zoloft had helped him then. Dr. Evans started him on Zoloft again and Trazodone for his sleep problems.  [Id.]

9

On December 4, 2001, Trujillo was seen for a follow-up visit with La Familia Medical Center. He reported that his depression was improved and rated it a 5 out of 10 instead of a 9. [Tr. at 249.] He also thought his back and shoulder pain might be better. He did, however, express significant discouragement about obtaining social security benefits. The physician observed that he appeared quite depressed and increased the Zoloft to 100/mg. [Tr. at 249.] Several weeks later, Trujillo reported that his depression, sleeping and appetite were all better. He felt better about things generally. [Tr. at 248.]

In 2002, Trujillo continued to be seen on many occasions related to his chronic back pain and was given trigger point and epidural injections. [Tr. at 247, 248.] An April 5, 2002 medical record indicates that Zoloft continued to help Trujillo and that if it did not take it for a day, he felt worse. Trujillo felt that his depression was much improved and that he felt better about things generally. [Tr. at 247.] However, he and his wife were separating and they were seeing a counselor. [Id.] On June 7, 2002, Trujillo again reported that Zoloft was helping with his depression. [Tr. at 246.] He felt more motivated on Zoloft and had fewer episodes of anxiety. [Id.]

In June 2002, Trujillo was involved in a motor vehicle accident that appears to have aggravated his back condition. [Tr. at 245, 258.] On June 14, 2002, he saw Dr. Theresa Genovese-Elliott, an orthopedic specialist. The record mostly discusses Trujillo's increased pain but also notes some depression. Trujillo was then separated from his wife and was a "recovered alcoholic." [Tr. at 258. An MRI in July 2002 revealed more back problems and degenerative change as compared to earlier MRI's. [Tr. at 255.] On July 18, 2002, the doctor stated that his back pain might be difficult to control. [Tr. at 244.] Trujillo had been taking Lortab since the car accident. [Tr. at 242-44.] An August 29 records states that Trujillo was depressed, that the Zoloft helped with his

depression but that he still did not look forward to anything. [Tr. at 242.] Dr. Glasser observed on that date that Trujillo appeared mildly depressed. [Tr. at 242.]

On September 12, 2002, Judge Switzer held the administrative law hearing. For the first time during the social security application process, Trujillo emphasized his alleged depression over his physical problems. He stated that he had been treated for depression since 1995, and that it had worsened over the years. [Tr. at 47-48.] He did not have the energy to do things, felt helpless and worthless, had lost interest in doing things, and was isolated. [Tr. at 48-49.] Still, he was able to visit three people once a week and go to church once a week. He ate at his mother's and helped her clean the yard. [Tr. at 49-51.] He alleged that he cried three times a week and had no feelings. [Tr. at 57-58.] He had recently gone through a divorce and was moody, irrational and angry. [Tr. at 61.]

During the hearing, the ALJ called upon a VE to testify. The VE testified that if the ALJ found that Trujillo could perform light work, he would only be able to perform his prior position of "escort" at LANL, a position he appeared to perform only on occasion. Trujillo's prior relevant work of carpentry is typically medium to heavy even though he was allowed to work at a light level in that position. [Tr. at 64.] The VE testified that the escort position did not exist in significant numbers in the regional economy. [Tr. at 65-66.] However, there were other positions that Trujillo could perform with the RFC presented by the ALJ, including cabinet assembler and hardware assembler. [Tr. at 66.]

Trujillo's attorney added some restrictions to the hypothetical and the VE testified that there were additional jobs that Trujillo could perform even with the additional limitations. [Tr. at 69.] Trujillo's attorney then asked the VE if Trujillo could perform the jobs if he was unable to concentrate, interact with co-workers and tended to cry for no apparent reason. With those

restrictions in mind, the VE testified that there would not be any positions Trujillo could perform. [Tr. at 69-70.]

At the end of the hearing, Judge Switzer observed that Trujillo had done a very fine job at LANL and had been productive for a number of years. She concluded that the records regarding his mental health indicated that it was secondary to the problems he had encountered and that when he had been at work, he had functioned very well. [Tr. at 38-40.]

Several weeks after the hearing, Trujillo was seen at Healthcare for the Homeless. The therapist who saw him noted longstanding depression that was worsened with physical injuries. He was sad and tearful and indicated that he needed SSDI benefits. He continued to take Zoloft. [Tr. at 261.] On October 15, 2002, he had been out of Zoloft and Lortab for a week and was not feeling well. He did not have any money for his prescription drugs. By October 28, he had been able to get Zoloft again which he reported was helpful for his depression. [Tr. at 262-63.] On October 29, 2002, the record notes that Zoloft helped with his anger and that he exhibited a mildly depressed affect. [Tr. at 263.]

On December 4, 2002, an Internist saw Trujillo and recorded his longstanding back problems. The record notes that he was chronically depressed despite medical therapy. His depression was exacerbated by chronic pain and economic instability brought on by the back injury. [Tr. at 257.] On December 14, 2002, Judge Switzer issued her decision denying Trujillo benefits. [Tr. at 14.]

In her decision, the ALJ noted that the first medical record regarding Trujillo's alleged depression was Dr. Caldwell's January 9, 2001 treatment note. [Tr. at 20, 191.] There was no indication, however, that Trujillo believed he was unable to work because of an alleged psychological limitation. The ALJ observed that none of his social security application paperwork refers to an

alleged mental impairment.  State agency consultants who reviewed Trujillo's records in November 2001 found insufficient evidence to support a finding of a medically determinable mental impairment. [Tr. at 20, 220.]  Judge Switzer also observed that many of the medical records, if not most of them that discussed Trujillo's depression, indicated that Trujillo felt Zoloft was helping his depression. Health care providers generally observed that Trujillo was mildly depressed.

Judge Switzer found that in contrast to the objective medical evidence, at the hearing Trujillo emphasized psychological problems over his physical problems.  For example, he testified that his depression started as early as 1995, even though there is no objective confirmation of this date.  The ALJ concluded that the objective medical evidence simply did not support a finding of a "severe" medically determinable mental impairment.  [Tr. at 21.]

## Discussion

Trujillo's attorney argues that this matter should be remanded so that new evidence of Trujillo's alleged mental impairment can be considered.  In addition, Trujillo challenges Judge Switzer's failure to conclude at step two that Trujillo had a severe medically determinable mental impairment and the ALJ's failure to obtain a mental RFC from a treating mental health professional.

## I.   NEW EVIDENCE

New material evidence not considered by the ALJ but submitted to the Appeals Council and considered in denying a request for review becomes part of the administrative record and is considered by this Court.  O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994); Corber v. Massanari, 2001 WL 1203004 at *1, No. 00-3390 (10th Cir. Oct. 11, 2001); Boone v. Apfel, 1999 WL 668253 at *2 (10th Cir. Aug. 26, 1999).  To be considered as part of the record, however, the evidence must relate to a period on or before the date of the ALJ's decision.  20 C.F.R. § 404.970(b).

Here, the Appeals Council was presented with some new evidence that was not before the

ALJ when she issued her decision.  For example, some of the Healthcare for the Homeless medical

notes were not provided to the ALJ, but were submitted to the Appeals Council, including the

December 4, 2002 record which states that Trujillo appeared to be chronically depressed despite

medical therapy and that his depression was exacerbated by chronic pain and financial instability.  [Tr.

at 10, 257.]  Even after consideration of these newer records, the Appeals Council denied the request

for review.

The new evidence on which Trujillo places more significant emphasis was neither provided

to the ALJ nor the Appeals Council, even though it could have been supplied to the Appeals Council

prior to its decision.[13]   Trujillo argues primarily that the Court should remand because of that

evidence so the record can be developed more fully.

The Court may remand a social security case without ruling on the merits if new and material

evidence is produced and there is good cause for failing to incorporate such evidence in the earlier

proceeding.  Mondragon v. Apfel, 2001 WL 118292 at *4 (10th Cir. 2001) (*relying on* 42 U.S.C.

§ 405(g)); Wright v. Barnhart, 284 F. Supp. 2d 1277, 1278 (D. Kan. 2003) (same).

The new evidence at issue here was attached to Trujillo's preliminary motion, -- "Mental

Health and Substance Abuse Evaluation," from the Santa Fe Community Guidance Center, dated and

signed on February 26, 2003.  [Doc. No. 7, Ex. 1.]  The signature is illegible but contains a "MA"

next to the name indicating that the person signing it had a Master of Arts Degree.  The first page of

this 6-page form indicates a "date of admission" of November 13, 2002.  It is unclear if this was the

---

[13]Even if the February 2003 evaluation had been provided to the Appeals Council, it is not clear at all that
the diagnoses then related to a period on or before the ALJ's December 2002 decision.

first date that Trujillo was seen at the Guidance Center or what "date of admission" actually means. The interview date on the form is February 26, 2003.

The ALJ was not presented with this form and it actually was not signed until some months after Judge Switzer issued her decision. In addition, the form was not presented to the Appeals Council even though on February 10, 2003, the Appeals Council deferred action on Trujillo's request for review for another 25 days in order to receive additional evidence. [Tr. at 11.] The Appeals Council denied the request for review on May 20, 2003, without benefit of the February 26 evaluation even though the form clearly could have been provided to the Appeals Council before the Council issued its decision.

The February 26 evaluation indicates that Trujillo has major depression with psychotic features and alcohol dependence in partial remission. Some of the history recorded on this form is inconsistent with other testimony provided by Trujillo. For example, the form states that Trujillo's longest full-time job lasted five years, rather than the ten-plus years he worked at LANL. The interviewer also notes that Trujillo had admitted to using alcohol in the past 15 days, using it during the past 20 years and using it to the point of intoxication in the past 5 years. Other records indicated that Trujillo stated he had stopped using alcohol in 1999. In addition, the February 26 evaluation states that Trujillo was divorced in September 2002, at about the time of the ALJ hearing, and yet at the hearing, Trujillo testified that he was divorced about two years before the hearing date.

According to the February 26 evaluation, Trujillo saw no need for alcohol treatment, and yet the interviewer believed further assessment in this area was necessary. Trujillo admitted to domestic violence during the first seven years of his marriage and also apparently to repeated sessions of anger

management, but he was unwilling to admit that his childrens' observance of these violent events affected their relationship with Trujillo.

Trujillo reported to the interviewer a lifetime of psychological problems, including serious depression, serious anxiety, hallucinations, trouble understanding and concentrating and trouble controlling violent behavior. Yet, very few, if any of the objective medical evidence before the ALJ and Appeals Council confirms this type of psychological problem.

Finally, the February 26 evaluation appears to be an initial evaluation as it indicates that Trujillo was being assigned to a counselor for individual and group therapy, and also that a psychiatric evaluation was scheduled with a doctor. It is unclear from the form what credentials, other than a MA, the interviewer had. The interviewer assigned a GAF of 35 to Trujillo.

The Court concludes that first, Trujillo does not provide any adequate reason for his failure to supply the February 26 evaluation to the Appeals Council before it issued its decision in May. Trujillo's current attorney states that he is unable to provide any information as to why Trujillo's prior representative did not submit this form to the Appeals Council. This simply does not amount to "good cause" sufficient to justify a remand.

Second, the February 26 form was filled out apparently by a non-licensed, non-certified therapist holding only a Master's degree. Accordingly, that person, whose name is illegible, is not an acceptable medical source under 20 C.F.R. § 416.913. Thus, even it the form had been supplied to the Appeals Council, it would not have been given controlling weight and therefore, would not have been material in the sense that it would likely have changed the outcome of the Commissioner's decision.

Therefore, the Court recommends denying Trujillo's request for remand based on this purported new evidence that was supplied only to this Court as part of Trujillo's briefing.

## II.   STEP TWO FINDINGS

At step two, the decision maker decides whether the claimant "has a medically severe impairment or combination of impairments." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988). "A severe impairment is one that interferes with basic work activities." Roberts v. Callahan, 971 F. Supp. 498, 500 (D.N.M. 1997). An impairment is not severe "if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs," including walking, standing, sitting, lifting, hearing, seeing, speaking, understanding, carrying out simple instructions, use of judgment, responding appropriately to supervision and co-workers, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b)(1-6). An impairment is not severe if it is only a slight abnormality with a minimal effect on the ability to work. Roberts, 971 F. Supp. at 500 (*citing* SSR 85-28).

> Presumptively, if the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, irrespective of vocational factors, the impairments do not prevent the claimant from engaging in a substantial gainful activity. If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.

Id. at 751 (*citing* Bowen v. Yuckert, 482 U.S. 137, 140, 107 S.Ct. 2287, 2291 (1987)).

Here, Trujillo claims that substantial evidence does not support the ALJ's step two findings that Trujillo did not suffer from a severe mental impairment. Trujillo actually argues that the ALJ failed to make a finding concerning a mental impairment. However, this is not true. Judge Switzer

determined in her opinion that the medical record did not support a finding of a severe medically

determinable mental impairment, notwithstanding Trujillo's emphasis on mental problems at the

hearing.  [Tr. at 21.]

The Court concludes that substantial evidence supports the ALJ's conclusion.  Many of the

objective medical records do not frequently report complaints of psychological problems by Trujillo.

In the year 2000, there were no such problems recorded in the many office visit notes.  However,

when Trujillo begins to complain of depression, many of the records indicate that his depression was

controlled with medication and/or that he was observed to be only mildly depressed.  None of the

medical records prior to the February 2003 evaluation infer or state that Trujillo was unable to work

because of psychological limitations.  While the step two showing of severity is a *de minimis*

showing, the Court concludes that substantial evidence in the objective medical record supports a

conclusion that Trujillo's psychological problems only minimally effected his ability to work.

Therefore, the Court finds substantial evidence to support the ALJ's decision.

## III.   MENTAL RFC FROM TREATING MENTAL HEALTH PROFESSIONAL

Trujillo also argues that the ALJ had a duty to obtain a mental RFC from a treating mental

health professional and that failure to do so in this case was error.  The Court disagrees.

The ALJ may be required to order a consultative examination in some cases, but the

Commissioner is given broad latitude in deciding whether tot order such an examination.  Diaz v.

Sec'y of Health & Human Services, 898 F.2d 774, 778 (10th Cir. 1990).  The ALJ's duty to do so

is triggered when the plaintiff satisfies his burden to provide objective evidence "sufficient to suggest

a reasonable possibility that a severe impairment exists."  Hawkins v. Chater, 113 F.3d 1162, 1167

(10th Cir. 1997).  In deciding how much evidence is sufficient to raise the issue, "the starting place

must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." Id.

Here, the Court concludes that Trujillo did not satisfy his burden of providing objective evidence sufficient to show his psychological problems suggested a reasonable possibility of a severe impairment. Thus, the ALJ was well within her discretion when she did not order a consultative mental examination for Trujillo.

### Recommended Findings

For all of the above stated reasons, the Court recommends that Trujillo's motion for remand [Doc. No. 7] be denied and that this matter be dismissed, with prejudice.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
Chief United States Magistrate Judge